UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────

DAIMAN H. BURKETT,

                    Petitioner,

        v.

                                                    9:14-CV-0110
DALE ARTUS,                                         (BKS)


                    Respondent.

─────────────────────────────────

APPEARANCES:                        OF COUNSEL:

Daiman H. Burkett
Petitioner, pro se
09-A-6328
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN           MICHELLE ELAINE MAEROV, ESQ.
Attorneys for Respondents           Ass't Attorney General
New York State Attorney General
120 Broadway
New York, New York 10271

Brenda K. Sannes
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        Petitioner Daiman H. Burkett ("petitioner") seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254, challenging a 2010 judgment of conviction in the Rensselaer County

Court, convicting him, upon a jury verdict, of murder in the second degree (N.Y. Penal Law

("Penal Law") § 125.25(1)) and criminal possession of a weapon in the third degree (Penal

Law § 265.02(1)).  Dkt. No. 1, Petition ("Pet.").  Respondent filed a response to the petition

and pertinent records from the state court proceedings.  Dkt. No. 7-1, Respondent's

Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem.");

Dkt. Nos. 8-9, State Court Records.  Petitioner filed a reply.  Dkt. No. 13, Reply.

## II.    BACKGROUND[1]

The Appellate Division, Third Department, summarized the pertinent facts as follows:

> At approximately 5:45 a.m. on February 26, 2009, paramedics and then police
> responded to a 911 call from the home of Des-Hawn Parker in the City of Troy,
> Rensselaer County.  Upon arrival, they encountered defendant, Parker's former
> boyfriend, covered in blood, wearing only trousers and pacing outside;
> defendant brandished a knife and aggressively advanced at them. Officers
> subdued defendant and entered the home, where paramedics found Parker's
> frightened but unharmed children on the first floor; they followed a trail of blood
> to a basement bedroom, where they discovered Parker's lifeless but still warm
> body on her bloodied bed. Parker had no knife wounds or defensive wounds
> but had sustained fatal blunt force trauma to her neck and, despite
> resuscitation efforts, was pronounced dead.  An autopsy determined that the
> cause of death was asphyxiation due to manual strangulation, and that death
> had occurred at 3:00 a.m. to 4:00 a.m.  The mostly superficial slicing wounds to
> defendant's chest, arms and ankles were not life threatening and were
> determined to have been self-inflicted, as the defense conceded at trial, and he
> had no defensive wounds.  DNA tests determined that defendant was the
> source of the blood in the house and on the victim's neck.  Following a jury trial,
> defendant was convicted of intentional murder in the second degree and
> criminal possession of a weapon in the third degree.

*People v. Burkett*, 101 A.D.3d 1468, 1468-69 (3d Dep't 2012).  The specific facts are known

to the parties and will be referenced only to the extent necessary to resolve petitioner's

claims.

After trial, petitioner filed a motion to vacate the judgment of conviction pursuant to

Criminal Procedure Law ("CPL") § 440.10.  In his motion, petitioner contended that: (1) he

was deprived of the assistance of counsel at his local court arraignment; and (2) trial counsel

---

[1] The following background information is derived from the state court records and the parties' submissions.

was ineffective in failing to retain an expert to testify on petitioner's behalf. Dkt. No. 8-1 at SR 2-8, Affidavit in Support, sworn to April 5, 2012; *id.* at SR 10-27, Memorandum of Law and Exhibits.[2] Notably, in his affidavit, petitioner asserted that he became "emotionally traumatized by the discovery of his girlfriend's body" and, as a result, "attempted suicide" before police officers arrived at the scene. Dkt. No. 8-1 at SR 2-3 ¶ 4.

In a written decision and order, the Rensselaer County Court denied petitioner's motion. *Id.* at SR 45-48, Decision and Order, dated July 26, 2012. The court concluded that, in light of the direct examination of Dr. Michael Sikirica, the medical examiner, and counsel's cross examination, counsel's decision not to call an expert was a tactical decision that "did not deprive [petitioner] of effective representation at trial." *Id.* at SR 47. The court further concluded that petitioner had not established that "but for trial counsel's alleged errors the result of the trial would have been different." *Id.* Moreover, the court rejected petitioner's claim that he was denied his right to counsel at arraignment. *Id.* at SR 47-48. The court found that the arraigning court advised petitioner of his right to an attorney and asked him if he had an attorney, and petitioner, "[f]ar from invoking his right to counsel," provided nonresponsive answers to the court's questions. *Id*. at SR 48. An assistant public defender had also been assigned "during [petitioner's] arraignment." *Id.* Petitioner did not seek leave to appeal from the denial of his § 440.10 motion.

---

[2]     More specifically, with regard to his ineffective assistance of trial counsel argument, petitioner contended that an expert retained on his behalf would have testified that (1) the time of death set forth in the medical examiner's autopsy report was inconsistent with the fact that the victim was given an IV and "endotrachal tube" when she was placed in an ambulance, at which point she would have been in "the first stages of rigor mortis"; (2) the medical examiner was negligent in failing to establish a specific time of death by completing a "temperature probe of [the victim's] liver"; and (3) the medical examiner was negligent in failing to obtain "sufficient DNA" from the victim's fingernails, which could have "exonerated" him. Dkt. No. 8, Attach. 1, at SR 5-6.

Petitioner also pursued a direct appeal and, in a counseled brief to the Appellate Division, Third Department, contended that: (1) the trial court erred in admitting evidence regarding prior bad acts pursuant to *People v. Molineux*, 168 N.Y. 264 (1901) without properly balancing the probative value of that evidence for a permissible purpose against the prejudicial effect to petitioner; (2) the court erred in not charging second degree manslaughter as a lesser included offense of the second degree murder charge; (3) the verdicts were against the weight of the evidence; (4) the sentence imposed was harsh and excessive; and (5) restitution was improperly imposed. Dkt. No. 8-1 at SR 76-98, Appellate Brief to the Appellate Division, Third Department.

The Appellate Division affirmed the judgment of conviction. *Burkett*, 101 A.D.3d at 1469-73. In concluding that the verdicts were supported by the weight of the evidence, the Appellate Division explained that "the manner of death firmly established that [petitioner's] conscious objective was to kill Parker." *Id.* at 1470. The court recounted that "[t]he medical examiner testified that the victim would have lost consciousness in about [fifteen] seconds if sufficient pressure were applied to her neck to completely cut off her blood supply, and that death would have occurred only after an additional two to three minutes of continuous applied pressure." *Id.* This "violent, protracted conduct by" petitioner, even after Parker lost consciousness, "strongly supported the jury's conclusion that his conscious objective was to kill and not merely subdue or injure her." *Id.* (footnote omitted). Moreover, the Appellate Division observed that petitioner "did not raise the affirmative defense of extreme emotional disturbance," codified in Penal Law § 125.25(1)(a). *Id.* at 1470 n.2. Nonetheless, the Appellate Division explained that petitioner's "self-inflicted superficial wounds" and behavior

upon the arrival of law enforcement "were more suggestive of an attempt to feign despair and fabricate an exculpatory crime scenario and did not undermine a finding regarding defendant's ability to form intent." *Id.*

With regard to his *Molineux* contention, the Appellate Division found that the County Court held "a detailed . . . pretrial hearing" and "properly admitted limited testimony regarding [petitioner's] prior abusive, threatening and controlling behavior against Parker and a former girlfriend," which was probative of petitioner's identity as the perpetrator, his intent and motive, and also "provided necessary background information regarding the nature of their relationship[.]" *Burkett*, 101 A.D.3d at 1470. The prosecution had proffered proposed testimony from seven different witnesses regarding "more than [twelve] instances of [petitioner's] controlling and threatening conduct toward Parker and other former girlfriends." *Id.* at 1471. The County Court addressed each specific instance and "preclud[ed] much of the proffer, including all or parts of the testimony of two of [petitioner's] ex-girlfriends, limiting or excluding the testimony of three of the victim's close girlfriends," and permitting evidence of only one of two proffered "domestic violence reports" that Parker filed in 2008 against him. *Id.* The Appellate Division noted that, other evidence, including voicemail messages left by Parker and threatening statements later made by petitioner to police officers, were precluded entirely due to their prejudicial nature. *Id.* In sum, the Appellate Division concluded that the court had appropriately weighed the relevant factual circumstances, case law, and the probative value of the evidence – which established petitioner's "identity, intent, and motive in murdering Parker" – against its probative value. *Id.* at 1471-72. Additionally, the trial court provided "an appropriate limiting instruction" in its jury charge. *Id.* at 1471 (footnote omitted).

With regard to the denial of petitioner's request that the court charge second degree manslaughter as a lesser included offense of second degree murder, the Appellate Division found that contention "foreclosed" because petitioner was actually convicted of second degree murder and the jury "never reached the next lesser included offense of manslaughter in the first degree," which was charged to the jury. *Burkett*, 101 A.D.3d at 1472-73 (citing *People v. Boettcher*, 69 N.Y.2d 174, 180 (1987)) (further citations omitted). Finally, the Appellate Division concluded that the sentence imposed was not an abuse of discretion and that the restitution ordered was appropriate. *Id.* at 1473.

Petitioner sought leave to the appeal to the New York Court of Appeals, contending in a counseled application that the court erred in: (1) permitting prior bad acts evidence pursuant to *Molineux*; (2) refusing petitioner's request to instruct the jury with regard to second degree manslaughter as a lesser included offense; and (3) ordering that restitution include reimbursement for the victim's funeral expenses. Dkt. No. 8-5 at SR 1032-34, Letter Application to the New York Court of Appeals, dated February 1, 2013. The Court of Appeals denied petitioner's application on March 28, 2013. *Burkett*, 20 N.Y.3d 1096 (2013).

In papers dated November 13, 2013, petitioner filed an application for a writ of error coram nobis. Dkt. No. 8-5 at SR 1039-72, Petition for Writ of Error Coram Nobis. Petitioner asserted that appellate counsel rendered ineffective assistance because he failed to argue on direct appeal that: (1) petitioner was deprived of his right to testify before the grand jury; (2) he was denied his right to counsel at his pre-indictment arraignment; (3) trial counsel was ineffective because he did not present an extreme emotional disturbance defense and advised petitioner not to testify at trial; and (4) petitioner's confrontation rights were violated

by the admission of prior statements made by the victim. *Id.* at SR 1047-72. The Appellate

Division denied petitioner's application, and the Court of Appeals thereafter denied leave to

appeal. *Id.* at SR 1101, Decision and Order on Motion of the Appellate Division, Third

Department, entered December 27, 2013; *People v. Burkett*, 23 N.Y.3d 1018 (2014).

## III. THE PETITION

Petitioner raises the following grounds for habeas relief: (1) he was denied the right to

counsel at his initial arraignment; (2) his right to testify before the grand jury pursuant to CPL

§ 190.50 was violated; (3) trial counsel was ineffective because he: (a) failed to investigate,

advise petitioner concerning, and pursue at trial, an extreme emotional disturbance defense,

and (b) advised petitioner not to testify at trial; (4) he was denied a fair trial by the trial court's

*Molineux* ruling, inasmuch as the prejudicial effect of the "prior bad acts and uncharged

crimes" evidence outweighed its probative value; (5) his confrontation rights were violated by

the admission of testimony concerning prior statements made by the victim; (6) the trial court

erred in not charging second degree manslaughter as a lesser included offense to second

degree murder; and (7) the restitution portion of his sentence was illegally imposed. Pet. at

4-7.[3]

## IV. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may grant habeas corpus relief with respect to a claim adjudicated on the merits in

state court only if, based upon the record before the state court, the state court's decision: (1)

---

[3] Citation to the petition refers to the pagination provided by CM/ECF, the Court's electronic filing system.

was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181, 185-86 (2011); *Premo v. Moore*, 562 U.S. 115, 120-121 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, __ U.S. __, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v.*

8

*Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473. Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Id.* at 473-74 (quoting § 2254(e)(1)).

**B.     Ground One: Right to Counsel at Initial Arraignment**

Petitioner contends that his right to counsel was violated because he did not have an attorney at his local court arraignment. Pet. at 4. Petitioner's claim is unexhausted and procedurally defaulted.

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). A petitioner must exhaust his or her claim both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2001) (petitioner must present "the essential factual and legal premises of his federal

constitutional claim to the highest state court capable of reviewing it."). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Carvajal*, 633 F.3d at 104).

A petitioner satisfies the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal*, 633 F.3d at 104 (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir.1982) (en banc)); *see Baldwin*, 541 U.S. at 33 ("Reese, however, has not demonstrated that Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim.").

"[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted). Unexhausted claims may be deemed exhausted if "it is clear that the unexhausted claim is procedurally barred by state law," rendering presentation of the claim in state court "futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)).

Here, petitioner presented his right to counsel claim in his CPL § 440.10 motion. Dkt. No. 8-1 at SR 2-8, 14-17. After his motion was denied, however, petitioner did not seek leave to appeal pursuant to CPL § 460.15. *See* Pet. at 3. "Since he never sought leave to appeal from [the motion] denial[], he plainly failed to exhaust his state-court remedies." *Pollard v. Gonyea*, No. 1:11-CV-5712, 2012 WL 2389663, at *12 (S.D.N.Y. Mar. 14, 2012), *adopted* 2012 WL 2389755 (S.D.N.Y. June 25, 2012); *accord. Ture v. Racette*, No. 9:12-CV-1864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) ("Although Ture raised the remaining claims in his pro se CPL § 440.10 motion, Ture did not seek leave to appeal the denial of that motion. Thus, these claims are unexhausted."); *Lee v. Greene*, No. 9:05-CV-1337, 2011 WL 500673 (GTS/DEP), at *4 n.4 (N.D.N.Y. Feb. 10, 2011).[4] Petitioner's claim is also procedurally defaulted, inasmuch he had thirty days within which to seek leave to appeal. That time period has long since expired, as has the one-year period within which he could have sought an extension of time within which to file a leave application. *See* CPL §§ 460.10(4)(a), 460.30; *Garner v. Superintendent*, No. 9:10-CV-1406 (GTS), 2012 WL 3929944, at *6 (N.D.N.Y. Sept. 10, 2012); *Santos v. Rock*, No. 1:10-CV-2896, 2011 WL 3449595, at *6-7 (S.D.N.Y. Aug. 5, 2011).[5]

---

[4] Petitioner asserts in his reply that he exhausted this issue by raising it in his motion for a writ of error coram nobis. Reply at 2. "The only constitutional claim [a petitioner is] permitted to raise in seeking a writ of error coram nobis [is] ineffective assistance of appellate counsel, a claim that is distinct from" the underlying claim that he was deprived of his right to counsel at the initial arraignment. *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) (summary order) (quoting *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001); *accord. Jones v. Senkowski*, 42 F. App'x 485, 487 (2d Cir. 2002); *Gilliam v. Artus*, 653 F. Supp. 2d 315, 326 (W.D.N.Y. 2009) ("Although Gilliam asserted the claim in his coram nobis application, in New York, such an application is not the proper means for asserting claims of error at the trial-court level."). Moreover, petitioner does not assert ineffective assistance of appellate counsel as a basis for relief in this proceeding.

[5] There is authority for the proposition that courts may not properly "deem" § 440.10 motions exhausted if the petitioner failed to seek leave to appeal from the denial of the motion. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) ("We have no authority to declare as a matter of state law that an appeal from the denial of his original Section 440.10 motion is unavailable or that he cannot raise [his] claim in a new Section 440.10 action.").

A "procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." *Aparicio*, 269 F.3d at 91 (citing *Coleman*, 501 U.S. at 748-749); *see House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003); *Rodriguez v. Mitchell*, 252 F.3d 191, 204 (2d Cir. 2001). To establish cause, petitioner must demonstrate that some objective external factor impeded his ability to comply with the procedural rule at issue. *Maples v. Thomas*, __ U.S. __, 132 S. Ct. 912, 922 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Murray v. Carrier*, 477 U.S. 478, 496 (1988); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner contends that he did not seek leave to appeal from the denial of his § 440.10 motion because his motion was denied pursuant to CPL § 440.10(2)(b). Pet. at 3 ¶ 11(d). That statute requires denial of a motion to vacate where the judgment is, at that time, "appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." Although the prosecution argued that petitioner's claims could be denied on the basis of CLP § 440.10(2)(b), the court plainly denied petitioner's motion on the merits, given that it discussed the facts at issue in relation to the legal standards applicable to petitioner's

Nevertheless, the Court is persuaded that the Supreme Court's subsequent decision in *Coleman v. Thompson*, 501 U.S. 722 (1991), "makes clear that federal courts are to determine whether an avenue of appeal regarding a habeas claim is available to a petitioner under state law, and therefore whether a petitioner's request for review of that claim by a state court would be futile." *Garner*, 2012 WL 3929944, at *6 (concluding that, in light of *Coleman*, petitioner's claim was deemed exhausted but procedurally defaulted for failure to seek leave to appeal the denial of his motion to vacate); *see also e.g. Strain v. Perez*, No. 9:11-CV-0345 (TJM), 2012 WL 1900550, at *4 & n.7 (N.D.N.Y. May 24, 2012); *Santos*, 2011 WL 3449595, at *7-8 .

claims and found that he was not entitled to relief. Dkt. No. 8-1 at SR 46-48. Petitioner could have sought leave to appeal from the motion court's denial of his claims on the merits, but he failed to do so. He provides no basis for finding cause, and the Court can discern none. *See Schlup*, 513 U.S. at 314. Although he raises several technical arguments regarding the conviction, he has not proffered any new evidence that would make a reasonable jury doubt his factual guilt. *See Poindexter v. Nash*, 333 F.3d 372, 380 (2d Cir. 2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used . . . in habeas jurisprudence generally"). The procedural default thus bars federal habeas review of these claims.[6]

### C.    Ground Two: Right to Testify Before the Grand Jury

Petitioner contends that he was deprived of his right to testify at the grand jury presentation of his case and that he received no notice of the presentation. Pet. at 4. This claim is not cognizable on federal habeas review and, in any event, any error related to the grand jury proceedings was cured upon petitioner's conviction by a petit jury.

---

[6] In any event, petitioner's claim is without merit. The right to counsel is guaranteed at "critical stages" of criminal proceedings, such as "the type of arraignment . . . where certain rights might be sacrificed or lost[.]" *United States v. Wade*, 388 U.S. 218, 225, 227 (1967); *accord. Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992). "Courts in this Circuit have held that habeas relief is not warranted where a criminal defendant was denied his right to counsel at an initial arraignment, but the defendant was not deprived of his rights or otherwise prejudiced." *Singleton v. Lee*, No. 6:10-CV-6094, 2013 WL 3187106, at *4 (W.D.N.Y. Jun. 20, 2013) (citing *Holland v. Allard*, No. 2:04-CV-3521, 2005 WL 2786909, at *7 (E.D.N.Y. Oct. 26, 2005)) (further citations omitted). Moreover, the state court record reflects that, at his initial arraignment in Troy City Court on February 28, 2009, the court advised petitioner of his right to an attorney. Dkt. No. 8-1 at SR 38-40, Transcript of Arraignment. Petitioner provided nonresponsive answers to the court's questions about his understanding of the charges, his rights, and his employment, and so the local court, unauthorized to set bail on the charge, assigned counsel, entered a not guilty plea on petitioner's behalf, and scheduled the next court appearance. *Id.* at SR 39-40. The record does not support the conclusion that petitioner sacrificed any rights as a result of the steps taken at his initial arraignment redressable by way of federal habeas relief. For these reasons, the state court's denial of petitioner's claim, as presented in his § 440.10 motion, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it an unreasonable determination of the facts in light of the evidence presented.

Claims of alleged deficiencies in state grand jury proceedings are not cognizable on federal habeas corpus review. *Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989); *accord Davis v. Mantello*, 42 F. App'x. 488, 490-91 (2d Cir. 2002) (summary order) ("Claims of deficiencies in the state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."). Such errors underlying state convictions do not warrant federal habeas relief because the Fifth Amendment right to a grand jury indictment "has not been incorporated against the states through the Fourteenth Amendment." *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (citations omitted); *see Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990) (citing *Hurtado v. California*, 110 U.S. 516 (1884)). Moreover, "it is well established that defendants have no constitutional right to appear before a grand jury." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990). These principles bar petitioner's claim that his was deprived of his right to appear before the grand jury, which, in New York State, is a purely statutory right. *Bailey v. Sheahan*, No. 6:13-CV-6438, 2014 WL 2895448, at *2 (W.D.N.Y. June 26, 2014) (citing *Velez v. People of State of N.Y.*, 941 F. Supp. 300, 315 (E.D.N.Y. 1996)); *Blond v. Graham*, No. 9:12-CV-1849 (JKS), 2014 WL 2558932, *9 (N.D.N.Y. June 6, 2014); *see* CPL § 190.50.

Additionally, even if petitioner's right to appear before the grand jury was violated, any error was rendered harmless when he was convicted following a jury trial. *Lopez*, 865 F.2d at 32 ("'[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding . . . was harmless beyond a reasonable doubt.'") (quoting

*United States v. Mechanik*, 475 U.S. 66, 70 (1986)); *Perez v. Lempke*, No. 1:10-CV-0303, 2011 WL 2746785, at *3 (W.D.N.Y. July 13, 2011) ("Because Petitioner was convicted after a jury trial at which the prosecution proved his guilt beyond a reasonable doubt, any error with regard to his right to testify at the grand jury proceeding was rendered harmless.").  Here, petitioner was found guilty on all charges submitted to the trial jury and thus any error regarding his right to testify at the grand jury presentation was harmless.  Dkt. No. 9-7 at 110, Trial Transcript.  Petitioner's claim is therefore denied and dismissed.

### D.    Ground Three: Ineffective Assistance of Counsel

Petitioner next asserts that trial counsel was ineffective because he failed to pursue an extreme emotional disturbance ("EED") defense in relation to petitioner's second degree murder charge, and advised petitioner not to testify at trial.  Pet. at 5.  Petitioner appears to be reiterating the same grounds raised in his motion for a writ of error coram nobis.  *See* Dkt. No. 8-5 at SR 1057-66.  In that application, petitioner cited his "serious attempts on his own life" after Parker's death, his mental condition when he was brought into custody, a "psychiatric evaluation" which "supported his mental instability," and the circumstances surrounding the victim's death.  *Id.* at SR 1057-63; *see* Reply at 2-14.[7]  Petitioner noted that he "did not intend to kill Ms. Parker," but that "the act was truly an accidental one which

---

[7]  In this regard, petitioner appears to refer to a "patient progress sheet" generated while he was admitted at Albany Medical Center for self-inflicted lacerations after he was taken into custody at the crime scene.  Dkt. No. 8-5 at SR 1086-87, Patient Progress Sheet, dated 2/27/2009.  The document – which bears the stamp of Robin Tassinari, M.D. – is difficult to decipher, but appears to reflect that petitioner was "groggy" and had been given morphine.  *Id.* at SR 1086.  Dr. Tassinari noted that he or she "cannot ascertain any psych hx" and would have to attempt to contact petitioner's family.  *Id.*  In a later note, Dr. Tassinari stated that petitioner had experienced "no change" and that, if "medically cleared," he would be arrested for "menacing."  *Id.* at 1086-87.  Dr. Tassinari further noted that, if petitioner were held in custody, it would be recommended that petitioner be placed on "watch for suicide and be followed by county psychiatric staff."  *Id.* at SR 1087.  It is not clear from the record whether Dr. Tassinari was at any point able to communicate with petitioner regarding his psychiatric history before petitioner was taken into custody, whether Dr. Tassinari or any other professional actually conducted a psychiatric evaluation of petitioner, or whether petitioner was considered a suicide risk while in custody pending trial.

caused her death due to two people engaged in an unstable, physically romantic relationship." *Id.* at SR 1064. Petitioner also argued in his coram nobis motion that trial counsel was ineffective in "not investigating and pursuing" an EED defense and instead presenting a defense based upon the identity of the culprit. *Id.* at SR 1060-61.

In his reply in further support of the present habeas petition, petitioner asserts that "behavioral and medical experts should have been hired for their testimonies in defense, and to rebut . . . the prosecution's prejudicial expert witness testimony of Dr. Sikirica." Reply at 9. Moreover, petitioner contends that counsel also "could have called . . . numerous friends and family members . . . who were very willing to testify in defense of his character[.]" *Id.* at 10. Petitioner told counsel that he "choked' Parker to death while "having rough sex," and that he could have testified to the cause of death at trial. *Id.* at 12-13, 15.

As an exhibit to his reply, petitioner has also attached the affidavit that he filed with the Appellate Division in support of his petition for a writ of error coram nobis, sworn to on August 12, 2013. Dkt. No. 13 at 31-33, Affidavit; *accord*, Dkt. No. 8-5 at SR 1076-78.[8] In his affidavit, petitioner asserts that he "wanted to testify in his case" but was "not informed of that opportunity to explain the circumstance surrounding . . . Park's death, and what truly occurred on February 26, 2009." Dkt. No. 13 at 31 ¶ 1. In that regard, petitioner asserts that Parker invited him to her house to talk and, when he arrived at Parker's house around 2:30 a.m. on the date at issue, they had an argument. *Id.* at ¶ 3. Soon after, petitioner apologized, and the two began a "rough sexual encounter" as they had many times in the past. *Id.* at ¶¶ 4-5. On some occasions, petitioner was "taunted with foul remarks" by

---

[8]     Citation to the exhibits to petitioner's reply refer to the pagination provided by CM/ECF, the Court's electronic filing system.

Parker, but those occasions "rarely . . . involve[d] choking since, according to [Parker, petitioner] squeezed like a bitch." *Id.* at ¶ 5.  However, on the occasion at issue, petitioner "h[e]ld [Parker] by the neck with [his] right hand[] while engaging in intercourse," without "realizing . . . the amount of strength [he] applied to [his] grasp while [his] hand was around her throat." *Id.*  Petitioner realized that he choked Parker "too tightly" when she "stopped responding to [his] passionate dialogue and ceased in saying more of her own." *Id.* at ¶ 6.  Blood began running from Parker's nose, and petitioner "panicked" and "stopped all sexual activity," sat Parker upright, and began "calling her name for a response." *Id.*  When Parker remained unresponsive, petitioner "started crying hysterically." *Id.* at 33 ¶ 7. Petitioner called 911, but was "traumatized by what [he] was experiencing[.]" *Id.* at ¶ 7.  Before medical personnel arrived, petitioner "attempted suicide with a nearby kitchen knife." *Id.* at ¶ 8.

Petitioner has not properly exhausted his ineffective assistance of trial counsel claim in state court.  Petitioner raised these bases of ineffective assistance of trial counsel in his motion for a writ of error coram nobis, but did not raise an ineffective assistance claim on direct appeal.  "[T]he only constitutional claim [petitioner] was permitted to raise in seeking a writ of error coram nobis was ineffective assistance of *appellate* counsel, a claim that is distinct from his claims of ineffective assistance of *trial* counsel." *Gilliam*, 653 F. Supp. 2d at 328 (emphasis in original) (noting that petitioner's "claim of ineffective assistance of trial counsel, and its sub-parts, raised as 'stand-alone' claims in his *coram nobis* application, remain unexhausted"); *accord, Rush*, 500 F. App'x at 15; *Turner*, 262 F.3d at 123.  Moreover, petitioner raised other arguments sounding in ineffective assistance in his § 440.10 motion, but not those advanced in his habeas petition.

Section 2254 "prohibits federal courts from *granting* relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)). Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because petitioner's unexhausted claims fail under either standard, the Court will dispose of them.

A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if a petitioner can establish that counsel was deficient, he still must show that he was prejudiced, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *accord Premo*, 562 U.S. at 121 (noting that petitioner "must show both deficient performance by counsel and prejudice.") (citation and internal quotation marks omitted). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]"

18

*Premo*, 562 U.S. at 122.

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Strickland*, 466 U.S. at 690). "Counsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio*, 269 F.3d at 95 (citations omitted). Moreover, the decision "whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotation marks omitted) (citing *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of a defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense counsel in almost every trial.")). Courts "must consider the totality of the evidence before the judge or jury" in adjudicating an ineffective assistance claim. *Strickland*, 466 U.S. at 695.

Under New York law, "[t]he affirmative defense of extreme emotional disturbance serves to reduce the degree of criminal culpability for acts that would otherwise constitute murder. A defendant who proves by a preponderance of the evidence that the homicide was committed while 'under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse' will be guilty of first-degree manslaughter rather than second-degree murder[.]" *People v. Diaz*, 15 N.Y.3d 40, 44-45 (2010) (quoting Penal Law § 125.25(1)(a)). The defense "requires evidence 'of a subjective element, that defendant acted under an extreme emotional disturbance, and an objective element, that there was a reasonable explanation or excuse for the emotional disturbance.'" *Diaz*, 15 N.Y.3d at 45 (quoting *People v. Smith*, 1 N.Y.3d 610, 612 (2004)); *accord, Lopez v. Ercole*, No. 09-CV-

1398, 2014 WL 285079, at *1 n.1 (S.D.N.Y. Jan. 27, 2014) ("Since this is an affirmative defense, defendant bears the burden of convincing the jury by a preponderance of evidence that (1) the defendant actually acted under the influence of EED; and (2) the explanation or excuse for this EED was reasonable.") (citing *People v. Roche*, 98 N.Y.2d 70, 75 (2002)). The objective element "requires proof that defendant's emotional disturbance was supported by a reasonable explanation or excuse," which is "'determined by viewing the subjective mental condition of the defendant and the external circumstances as the defendant perceived them to be at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for [the] emotional disturbance was reasonable[.]'" *Roche*, 98 N.Y.2d at 76 (quoting *People v. Harris*, 95 N.Y.2d 316, 319 (2000)). "A defendant cannot establish an extreme emotional disturbance defense without evidence that he or she suffered from a mental infirmity not rising to the level of insanity at the time of the homicide[.]" *Id.* at 75.

In this case, the record does not support the conclusion that trial counsel rendered ineffective assistance by not pursuing an EED defense, or that such a defense was remotely likely to succeed at trial. Even accepting the contentions in petitioner's affidavit as true, these contentions suggest only that (1) petitioner and Parker engaged in a "civil" conversation about their romantic history, got into an argument, and petitioner apologized, (2) petitioner deliberately "h[e]ld her by the neck" while they engaged in sexual intercourse, as he purportedly had done on past occasions at Parker's demand, and (3) petitioner became emotionally disturbed and began "crying hysterically" *after* he realized that Parker lost consciousness while he was choking her. Dkt. No. 13 at 31-32 ¶¶ 1-3, 5, 7. To the extent that petitioner may be understood to assert that he was provoked by Parker's disparaging

20

remarks about his strength in choking her (an assertion not clearly advanced in his affidavit), the Court notes that, even if accepted as true, "[a]cting out of anger or embarrassment is 'not equivalent to the loss of self control generally associated with" the defense of extreme emotional disturbance.'" *Linnen v. Poole*, 766 F. Supp. 2d 427, 463-64 (W.D.N.Y. 2011) (quoting *People v. Walker*, 64 N.Y.2d 741, 743 (1984), and collecting cases). In short, petitioner's version of events does not suggest that he behaved in a manner consistent with an extreme emotional disturbance in the time leading up to Parker's death, or that such a disturbance would have been supported by a reasonable explanation or excuse in light of the surrounding circumstances. *Roche*, 98 N.Y.2d at 75-76.[9] Trial counsel did not render ineffective assistance by failing to pursue a defense that lacked merit when considered in light of petitioner's own account of Parker's death.

To the extent that petitioner argues in his reply that trial counsel was ineffective because he dissuaded petitioner from testifying and because he failed to call witnesses willing to testify "in defense of his character assassination," Reply at 10, these arguments also warrant no relief. Petitioner has failed to provide any facts in support of his claim that

---

[9] The Court notes that the evidence adduced at trial is also at odds with the account in petitioner's affidavit and does not suggest that counsel was ineffective for failing to pursue an EED defense. Specifically, petitioner's physical abuse of Parker was neither an anomaly occasioned by an emotional disturbance on the night of Parker's death nor limited to times when the two engaged in consensual sexual intercourse. R.M., Parker's son, testified that, one night in September 2008, Parker called out R.M.'s name and, when he ran to Parker's bedroom, he observed petitioner choking her. Dkt. No. 9-6 at 135-36, Trial Transcript. Thereafter, petitioner ran upstairs and left Parker's house. *Id.* at 136. Moreover, R.M. testified that, on the morning of Parker's death and before law enforcement confronted petitioner, R.M. observed Petitioner washing his hands and a knife in the bathroom. *Id.* at 132, Trial Transcript. R.M. instructed his younger sister, who had awoken, to "lay back down," and, at that point, petitioner looked into R.M.'s room and "ran out the front door." *Id.* at 133. Based upon the evidence adduced at trial, the Court finds that the Appellate Division's observation that petitioner's "self-inflicted superficial wounds and behavior when police arrived were more suggestive of an attempt to feign despair and fabricate an exculpatory crime scenario" was an apt one. *Burkett*, 101 A.D.3d at 1470 n.2.

counsel refused to permit him to testify,[10] nor does he state how he was prejudiced by that decision.[11] Petitioner also has not identified which witnesses should have been called to testify as to his character, much less how any of these unidentified witnesses would have been helpful to his case. "It is well established that conclusory allegations, such as these, are insufficient to meet the rigorous standard under *Strickland v. Washington*." *Smalls v. McGinnis*, No. 04-CV-0301, 2004 WL 1774578, at *23 (S.D.N.Y. Aug. 10, 2004); *see Encarnacion v. McGinnis*, No. 01-CV-0586, 2008 WL 795000, at *13 (N.D.N.Y. Mar. 24, 2008) (Sharpe, J. adopting Report-Recommendation of Bianchini, M.J.) (rejecting ineffective assistance of counsel claim based upon counsel's failure to investigate unspecified "exculpatory leads" and failed to properly investigate or interview potential defense witnesses because "[p]etitioner does not identify many of the potential witnesses nor state with

---

[10] In a letter to trial counsel dated June 10, 2013, petitioner noted that, during the course of trial, trial counsel "informed" petitioner that he "should not testify." Dkt. No. 13 at 47, Letter to Trial Counsel.

[11] To the contrary, the record supports the conclusion that, if trial counsel did dissuade petitioner from testifying, that decision was one of trial strategy and which was entirely reasonable. Petitioner argues in a conclusory manner that he could have "provided the jury with an explanation of his behavior" on the night of Parker's death, "contradicted the state's theory about both the motive and circumstances surrounding the killing," and explained why he choked Parker with one hand while "intentional murderers . . . commonly have used two hands"). Reply at 15. However, petitioner provides no factual support indicating that his failure to testify was prejudicial to his case and, as noted above, his affidavit – even if credited – does not provide a basis for concluding that he was suffering from an extreme emotional disturbance (much less a reasonable one) at the time of Parker's death. It is also unclear how petitioner could have offered admissible testimony distinguishing Parker's death on the basis that "intentional murderers" typically strangle their victims with two hands, instead of one hand, or that the jury would have found such testimony persuasive in light of the prosecution's evidence of petitioner's guilt. Petitioner's assertion in his affidavit that he stopped choking Parker and attempted to elicit a response from her as soon as she stopped talking is at odds with the conclusions of the medical examiner, who testified at trial that Parker would have lost consciousness in approximately fifteen seconds but would have died only after an additional two to three minutes of continued pressure. *Burkett*, 101 A.D.3d at 1470. Moreover, petitioner would have been subject to cross-examination not only about his version of the events at issue (i.e., that he accidentally killed Parker during "rough" sexual intercourse), but also his previous threatening, verbally abusive, and violent behavior toward Parker as well as a prior girlfriend. Moreover, the Court notes that petitioner has not rebutted the presumptive correctness of the state courts' factual findings with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Thus, while petitioner may have been able to offer testimony in contradiction to that provided by other witnesses, his vague and conclusory assertions in support of his habeas petition provide no support for the proposition that his testimony would have been persuasive or that he was prejudiced by trial counsel's advice not to testify.

particularity how the testimony or evidence in question would have been exculpatory");

*Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. Nov. 2, 2006) (rejecting claim that

counsel was ineffective for not investigating and calling witnesses at trial because petitioner

did not identify the witnesses or how they would have revealed information helpful to his

case); *United States v. Vargas*, 871 F. Supp. 623, 624 (S.D.N.Y. 1994) (rejecting ineffective

assistance claim based on failure to investigate and failure to call character witnesses where

there was "no evidence that avenues suggested by the client which might have altered the

outcome were ignored" and petitioner "fail[ed] to identify what persuasive character

witnesses would have been involved, or to show that counsel was unwise in not opening up

such witnesses to cross-examination").  These claims of ineffective assistance are too vague

and conclusory to state a proper ground for habeas relief and are therefore dismissed.

Moreover, petitioner argues (again, in his reply) that counsel should have retained

"behavioral and medical experts" to testify on his behalf and to rebut Dr. Sikirica's testimony

concerning the "range" of time of pressure to the neck that could have resulted in the victim's

death.  Reply at 9-10.  "The decision whether or not to call an expert witness generally falls

within the wide sphere of strategic choices for which counsel will not be second-guessed on

habeas review."  *Savinon v. Mazucca*, 04-CV-1589, 2005 WL 2548032, at *33 (S.D.N.Y. Oct.

12, 2005), *adopted*, 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006) (quoting *Stapleton v.

Greiner*, No. 98-CV-1971, 2000 WL 1207259, at *16 (E.D.N.Y. July 10, 2000)); *accord*, *Best*,

219 F.3d at 201 (noting that "counsel's decision as to whether to call specific witnesses-even

ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional

representation") (citation and internal quotation marks omitted); *United States v. Kirsh*, 54

F.3d 1062, 1072 (2d Cir. 1995), *cert. denied*, 516 U.S. 927 (1995).  Petitioner's vague,

conclusory assertion provides the Court with no basis upon which to conclude that there was a witness who could have offered relevant and probative evidence in support of his version of the events at issue or to counter the medical examiner's testimony regarding the length of time that a continuously applied pressure to the neck may result in death. Under these circumstances, the decision of trial counsel not to call his own expert "cannot be considered objectively unreasonable" because petitioner "has only presented his vague hope that another expert might have reached a different result than the government expert." *Savinon*, 2005 WL 2548032, at *33 (quoting *Leaks v. United States*, 841 F. Supp. 536, 545 (S.D.N.Y.1994) (footnote omitted), *aff'd*, 47 F.3d 1157 (2d Cir. 1995), *cert. denied*, 516 U.S. 926 (1995)). Moreover, petitioner cannot establish prejudice because he has not shown that a defense expert would have contradicted the prosecution's evidence. *See James v. United States*, No. 00-CV-8818, 2002 WL 1023146, at *16 (S.D.N.Y. May 20, 2002) (rejecting petitioner's claim that trial counsel was ineffective in failing to obtain expert testimony where petitioner "provide[d] no reason to believe that an . . . expert hired by the defense would have offered any exculpatory testimony or indeed any testimony that differed from the Government expert"); *Murden v. Artuz*, 253 F.Supp.2d 376, 389 (E.D.N.Y. Sept. 7, 2001), *aff'd*, 60 F. App'x 344 (2d Cir. 2003) (concluding that the petitioner failed to show prejudice based on attorney's decision not to hire an expert where the petitioner did not "come forward with affidavits or other admissible evidence showing that there is an expert witness who would have testified" concerning issues that would have raised a reasonable doubt as to petitioner's guilt).

Accordingly, petitioner has provided no basis for concluding that he received ineffective assistance of counsel during the course of the prosecution, and this ground for

24

habeas relief is therefore denied and dismissed.

### E. Ground Four: The Trial Court's *Molineux* Ruling

Petitioner contends that the trial court's *Molineux* ruling resulted in an unfair trial because the probative value of the prior bad acts evidence that the prosecution was allowed to present was outweighed by the prejudicial effect of its admission. Pet. at 5; Reply at 22-25. More particularly, in his reply, petitioner argues that the trial court should not have permitted Tarita Owens, petitioner's ex-girlfriend, to testify regarding an incident in 2001 during which he "strangled [Owens] to a state of unconsciousness[.]" Reply at 23.

At trial, Owens testified that, one evening in March 2001 when she returned to her apartment after work, she discovered petitioner (with whom she was no longer romantically involved) hiding in a hall closet. Dkt. No. 9-6 at 73, 75-77, Trial Transcript. All the lights in the apartment were off. *Id.* at 77. Owens demanded that petitioner leave and attempted to call the police, but observed that the "wire to the phone" had been cut and the line was dead. *Id.* at 78. Soon thereafter, petitioner "turn[ed] on the gas to the stove," took out a lighter and "threaten[ed] to blow [himself and Owens] up[.]" *Id.* at 80. A physical altercation ensued in view of Owens' daughter, and, eventually, petitioner pinned Owens on her bed and grabbed her by the neck. *Id.* at 82. According to Owens, during the struggle, petitioner stated, "If I can't have you, no one else can have you." *Id.* "At some point," Owens briefly "passed out" as a result of petitioner choking her. *Id.* at 83.

"Evidentiary questions are generally matters of state law and raise no federal constitutional issue for habeas review." *Sudler v. Griffin*, No. 9:12-CV-0367 (NAM/ATB), 2013 WL 4519768, at *3 (N.D.N.Y. Aug. 26, 2013); *accord, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the Untied States.").  "A decision to admit evidence of a defendant's uncharged crimes or other bad acts under [*Molineux*] constitutes an evidentiary ruling based on state law." *Sudler*, 2013 WL 4519768, at *3 (citing *Sierra v. Burge*, No. 06-CV-14432, 2007 WL 4218926, at *5 (S.D.N.Y. Nov. 30, 2007)); *accord, Buchanan v. Chappius*, No. 9:15-CV-0407 (LEK), 2016 WL 1049006, at *4 (N.D.N.Y. Mar. 11, 2016).[12]  "Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was so extremely unfair that its admission violates fundamental conceptions of justice." *Buchanan*, 2016 WL 1049006, at *4 (quoting *Sudler*, 2013 WL 4519768, at *3) (further citations and internal quotation marks omitted); *accord, Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990), *cert. denied*, 525 U.S. 840 (1998)).  "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan*, 137 F.3d at 125 (citations and internal quotation marks omitted); *accord*, *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

Under New York law, evidence of uncharged crimes, prior convictions, or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake

---

[12]      Moreover, the Supreme Court has not expressly addressed whether a state law permitting the use of "prior crimes" evidence to show criminal propensity would violate the Due Process Clause, and such a ruling therefore could not be said to contravene or unreasonably apply clearly established Supreme Court precedent. *Estelle*, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. *Molineux*, 168 N.Y. at 293; *accord*, *People v. Ventimiglia*, 52 N.Y.2d 350, 359 (1981). Moreover, New York courts have found evidence of prior acts of domestic violence perpetrated by a defendant relevant not only to the issues of identity and intent, but also "to provide background information concerning the context and history of [the] defendant's relationship with the victim[.]" *People v. Wertman*, 114 A.D.3d 1279, 1280 (4th Dep't 2014), *lv. denied*, 23 N.Y.3d 969 (2014), *habeas denied sub nom. Wertman v. Annucci*, No. 9:15-CV-0941 (JKS), 2016 WL 2903250, at *7 (N.D.N.Y. May 18, 2016) (citations and internal quotation marks omitted); *accord, e.g., Wise v. Superintendent of Attica Corr. Facility*, No. 08-CV-6312, 2010 WL 3943733, at *7 (W.D.N.Y. Oct. 7, 2010); *People v. Meseck*, 52 A.D.3d 948, 950 (3d Dep't 2008), *lv. denied*, 11 N.Y.3d 739 (2008); *People v. Doyle*, 48 A.D.3d 961, 964 (3d Dep't 2008), *lv. denied*, 10 N.Y.3d 862 (2008).

On direct appeal, the Appellate Division concluded that, after its "detailed *Molineux* pretrial hearing," the County Court properly admitted "limited testimony" concerning petitioner's "prior abusive, threatening and controlling behavior against Parker and" Owens because the testimony was relevant to petitioner's identity as the perpetrator, intent, and motive, and also "provided necessary background information regarding the nature of their relationship, which Parker had tried to terminate and the context in which [petitioner's] conduct occurred[.]" *Burkett*, 101 A.D.3d at 1470. As the Appellate Division noted, under New York law, prior bad acts in the context of domestic violence situations "are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent, motive, identity and

absence of mistake or accident[.]" *Id.* (quoting *People v. Westerling*, 48 A.D.3d 965, 966 (3d

Dep't 2008)). Additionally, the Appellate Division observed that the prosecution had

"requested testimony from seven witnesses regarding more than 12 instances of [petitioner's]

controlling and threatening conduct toward Parker and other former girlfriends." *Burkett*, 101

A.D.3d at 1471.[13] The County Court, the Appellate Division concluded, had properly

considered each instance and "preclud[ed] much of the proffer, including all or parts of the

testimony of two of [petitioner's] ex-girlfriends and limiting or excluding the testimony of three

of the victim's close girlfriends, and allowed evidence of only one of two domestic violence

reports that Parker had filed in 2008[.]" *Id.*

In sum, for the same reasons set forth by the Appellate Division, the trial court

properly permitted the prosecution to present evidence of certain prior bad acts that were

relevant to material issues at trial, while excluding other instances that lacked sufficient

---

[13] In this case, the prosecution sought to present evidence of numerous instances of petitioner's alleged prior bad acts, including, among other things, the following: (1) the testimony of Theresa Vessels, petitioner's ex-girlfriend, with respect to incident in 1996 in which petitioner broke her nose and "spit in her face" out of an anger when another man placed a phone call to Vessels; (2) the testimony of Owens, petitioner's ex-girlfriend, with respect to (a) petitioner's violent behavior in 1999, (b) the 2001 incident during which petitioner choked Owens to the point of unconsciousness, for which he was convicted of menacing in the third degree; (3) the testimony of Latonia Berkley-Taylor, Parker's best friend, with respect to (a) her observations of petitioner's abusive behavior toward Parker between 2002 and 2004, and (b) Parker's statements to Berkley-Taylor in February 2009 that she was intending to end her relationship with petitioner; (4) the testimony of R.M., with respect to (a) the incident in September 2008 in which he observed petitioner choking Parker, (b) an incident shortly before Parker's death in which petitioner "tr[ied] to pull the sunroof off the car" and "bang[ed] on the car window," and (c) the fact that petitioner moved because she did not want petitioner to know where she was living; (5) the testimony of Lorraine King, Parker's friend, with respect to petitioner's angry and jealous behavior toward Parker in 2008; (6) the testimony of Birt Adams, Parker's friend, with respect to, *inter alia*, threatening statements and behavior on the part of petitioner on New Year's Eve of 2008; (6) the testimony of Cheryl Hall-Clark, Parker's friend, with respect to (a) petitioner's angry, confrontational, and jealous behavior toward Parker around 2002 at Parker's workplace, (b) Parker's statements that petitioner "forced himself upon . . . Parker sexually," and accused Parker of cheating on him, (c) Hall-Clark's awareness that Parker was attempting to end her relationship with petitioner due to his behavior, (d) the fact that Parker left her cellular phone open and connected when petitioner came to her residence, so that Hall-Clark could hear what was occurring as a safety measure; (7) prior domestic incident reports from February 2008 and June 2008; and (8) voicemail messages left by Parker on petitioner's cellular phone. Dkt. No. 8-5 at SR 937-948, Prosecution's Motion in Limine. As the Appellate Division explained, much of the prosecution's proffer was excluded, including Vessels' proposed testimony in its entirety. *See* Dkt. No. 9-6 at 215, Trial Transcript.

probative value to justify the prejudicial effect of admitting them. Petitioner provides no basis to conclude that the state courts' rulings on this issue – with respect to the prior bad acts evidence in general or to Owens' testimony in particular – violated New York evidentiary rules, much less that they were fundamentally unfair and thus contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[14] As a result, petitioner is not entitled to habeas relief on this ground, and it is therefore denied and dismissed.

### F.   Ground Five: Right to Confront Witnesses

In Ground Five of his petition, petitioner contends that his right to confront the victim under the Sixth Amendment was violated by the introduction of the victim's statements through the trial testimony of her friends and family. Pet. at 6; Reply at 26-27. Petitioner's claim is unexhausted and procedurally defaulted.

Petitioner argued in his motion for a writ of error coram nobis that his right to confrontation was violated, but he did not assert this claim on direct appeal. Dkt. No. 8-5 at SR 1066-69. Presentation of his claim in the context of his coram nobis motion (the purpose of which is to advance a claim of ineffective assistance of appellate counsel) was not sufficient to fairly present to an appropriate state court petitioner's underlying confrontation claim. *Gilliam*, 653 F. Supp. 2d at 328. Moreover, the basis of petitioner's claim is apparent on the record and could have been raised on direct appeal. Petitioner can no longer file a

---

[14] In his reply, petitioner argues that several of the details to which Owens testified concerning the occasion in 2001 on which petitioner choked her and threatened her were not included in her police statement generated in 2001. Reply at 23. Petitioner argues that Owens' testimony was therefore "perjured" and the subject of "rehearsal." *Id.* Petitioner's contentions in this regard are entirely conclusory and speculative, and afford him no basis for habeas relief. The Court notes only that trial counsel throughly cross-examined Owens with respect to the fact that certain details of her testimony were not memorialized in her earlier police statement. Dkt. No. 9-6 at 96-103, Trial Transcript.

direct appeal or leave application to exhaust his claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division" and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark*, 510 F.3d at 393 (noting that, "even if no state court had applied section 440.10(2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas").

Petitioner has not demonstrated cause for his failure to raise the issue or resulting prejudice, nor has he alleged that he is actually innocent.[15] *Aparicio*, 269 F.3d at 91. As a result, petitioner's claim is barred, and it is therefore denied and dismissed.[16]

### G.   Ground Six: Failure to Charge Lesser Included Offense

Petitioner next contends that the trial court erred in refusing to charge the jury with respect to "reckless manslaughter" as a lesser included offense of murder in the second

---

[15] Moreover, as discussed above, petitioner does not assert in his petition that appellate counsel rendered ineffective assistance for failing to advance his Confrontation Clause claims on direct appeal.

[16] In any event, for the reasons set forth in the Government's memorandum of law, the Court concludes that Petitioner's claim is lacking in merit. Dkt. No. 7-1 at 44-45. As the Government correctly observes, the record does not support the conclusion that the victim's statements to her friends and family regarding petitioner (as testified to by those individuals, who were subject to cross-examination) were testimonial in nature. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). Here, there is no indication that the declarant (i.e., the victim) had any reasonable expectation that her statements, made to friends and family outside the context of any proceeding, investigation, or formal complaint, would be used in future judicial proceedings. *See United States v. Saget*, 377 F.3d 223, 228-230 (2d Cir. 2004); *see generally Giles v. California*, 554 U.S. 353, 376 (2008) (noting that "only *testimonial* statements are excluded by the Confrontation Clause[, and s]tatements to friends and neighbors about abuse and intimidation . . . would be excluded, if at all, by hearsay rules"). The Court notes that, as the Appellate Division concluded, the testimony at issue was admissible for nonhearsay purposes. *Burkett*, 101 A.D.3d at 1472 n.4 ("While some of the background information consisted of hearsay statements of the victim or was based thereon, no hearsay objections were raised during trial but, in any event, the testimony was admissible on the issue of the victim's state of mind related to and fear of defendant and to explain her behavior toward him.") (citation omitted). Petitioner is not entitled to habeas relief on this basis.

degree.[17]  Pet. at 6.  Petitioner's claim is not cognizable on habeas review.

Both the United States Supreme Court and the Second Circuit have explicitly refrained from deciding whether the United States Constitution requires that juries be instructed with respect to lesser included offenses in non-capital cases.  *Beck v. Alabama*, 447 U.S. 625, 637-38 & n.14 (1980); *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (per curiam).  As the Second Circuit has noted, reaching this issue "would involve the announcement of a new rule" in violation of *Teague v. Lane*, 489 U.S. 288, 299-300, 316 (1989).  *Jones*, 86 F.3d at 47.  Accordingly, petitioner's claim is not cognizable on habeas review.  *Id.* at 47-48; *accord, Bonilla v. Lee*, 35 F. Supp. 3d 551, 569 (S.D.N.Y. 2014) ("*Jones* and *Teague* preclude consideration of the petitioner's claim that he was entitled to the lesser charge of manslaughter in the first degree."); *Hendrie v. Greene*, No. 9:06-CV-0370 (TJM/RFT), 2010 WL 786467, at *9 (N.D.N.Y. Mar. 3, 2010) ("[P]ending the pronouncement of a new constitutional rule, a claim based on an alleged error to charge a lesser included offense is not cognizable in a habeas proceeding because absent such a rule, there is no basis to find an unreasonable application and/or violation of clearly established federal law."); *Mills v. Girdich*, 614 F. Supp. 2d 365, 382 (W.D.N.Y. 2009).

For the sake of completeness, the Court notes that, as the Appellate Division concluded on petitioner's direct appeal, petitioner also was not entitled to an instruction with respect to second degree manslaughter under New York State law.  *Burkett*, 101 A.D.3d at 1472 (concluding that petitioner's claim was "foreclosed" because he "was in fact convicted of second degree murder as charged in the indictment and the jury never reached the next

---

[17]  "A person is guilty of manslaughter in the second degree when . . . [h]e recklessly causes the death of another person."  Penal Law § 125.15(1).

lesser included offense of manslaughter in the first degree which was included in the court's charge").  At petitioner's request, the trial court instructed the jury with respect to manslaughter in the first degree in violation of Penal Law § 125.20(1) ("[w]ith intent to cause serious physical injury to another person," causing the death of that person) as a lesser included offense to murder in the second degree.  Dkt. No. 9-6 at 187-204, Charge Conference Transcript; Dkt. No. 9-7 at 72-75, Jury Charge Transcript.  Petitioner was convicted of murder in the second degree, and the jury thus had no occasion to consider manslaughter in the first degree as a lesser included offense.  "[W]here a court charges the next lesser included offense [manslaughter first] of the crime alleged in the indictment [murder second], but refuses to charge lesser degrees than that, . . . defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses [manslaughter second][.]"  *Burkett*, 101 A.D.3d at 1473 (quoting *Boettcher*, 69 N.Y.2d at 180).

For these reasons, petitioner is not entitled to habeas relief on this ground, and it is therefore denied and dismissed.

### H.    Ground Seven: Illegally Imposed Restitution

Finally, petitioner contends that the sentencing court's order that petitioner pay the victim's funeral expenses was "illegally imposed."  Pet. at 7.  Plaintiff cites no federal constitutional principle or Supreme Court precedent in support of his contention.

Following trial, the sentencing court ordered that, as part of his sentence, petitioner pay restitution in the amount of $13,000, representing the victim's funeral expenses, which had been paid in part by the New York Office of Victim Services and by the father of the victim's surviving children.  Dkt. No. 9-8 at SR 9-12, Sentencing Transcript.  On direct appeal,

32

petitioner contended that the restitution order was improper because "reimbursement for funeral expenses does not constitute payment to a victim within the meaning of" Penal Law § 60.27(4)(b) and New York Executive Law § 621. Dkt. No. 8-1 at SR 97.

Petitioner's contention that restitution was illegally imposed is not cognizable on habeas review. *Hodges v. Bezio*, No. 9:11-CV-0439 (LEK/DEP), 2014 WL 2779267, at *9 (N.D.N.Y. June 19, 2014) (concluding that petitioner's argument that "the amount of restitution awarded by the state court violate[d] Penal Law § 60.27" had "no basis . . . in constitutional or federal law" and was thus not cognizable on habeas review); *accord, Rojas v. Heath*, No. 11-CV-4322, 2012 WL 5878679, at *8 n.19 (S.D.N.Y. Oct. 18, 2012), *adopted*, 2012 WL 5878752, at *1 (S.D.N.Y. Nov. 16, 2012) (noting, in the context of a restitution claim, that habeas relief "is unavailable for claims that have no effect upon a petitioner's custody"); *see also United States v. Boyd*, 407 F. App'x 559, 560 (2d Cir. 2011) (summary order) (explaining, in the context of 28 U.S.C. § 2255, that "[r]estitution orders cannot be challenged through a habeas petition because a 'monetary fine is not a sufficient restraint on liberty to meet the in custody requirement,' even if raised in conjunction with a challenge to a sentence of imprisonment") (quoting *Kaminski v. United States*, 339 F.3d 84, 87-88 (2d Cir. 2003)) (further internal quotation marks omitted).

Accordingly, this ground provides no basis for the relief petitioner seeks, and it is therefore denied and dismissed.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[18] and it is further

**ORDERED** that the Clerk send petitioner copies of the unpublished decisions cited in this Decision and Order in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  November 10, 2016

Brenda K. Sannes
U.S. District Judge

---

[18]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).